# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| CYNTHIA McDANIEL, individually, ) <br> and as Guardian and Conservator of ) <br> KIRBY LEE McDANIEL, JR., an ) <br> Incapacitated Person, ) <br> ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> FORD MOTOR COMPANY, ) <br> ) <br> Defendant. ) | **Civil Action No:** <br> **1:12-cv-01470-RLV** |

## EMERGENCY MOTION FOR *INSTANTER* HEARING REGARDING OSI DISCOVERY

Plaintiff, Cynthia McDaniel, individually and as Guardian and Conservator of Kirby Lee McDaniel, Jr., an incapacitated person, files this Emergency Motion for *Instanter* Hearing Regarding OSI Discovery as Ford Motor Company has withheld and misrepresented the existence of additional other similar incident (or "OSI") information with respect to 2003-2012 Ford Expedition (U222)/Lincoln Navigator (U228) vehicles.

Ford's refusal to produce OSI discovery in this defective product case was previously presented to the Court, and the subject of an Order compelling production. Ford represented that it had already produced all information and

documentation in its possession, custody and control relating to OSIs involving 2003-2012 Ford Expedition (U222)/Lincoln Navigator (U228) vehicles. Accordingly, the Court's prior OSI hearing focused on whether to expand OSI discovery from the U222/U228 platform vehicles to additional similar Ford vehicles with the same or similar safety canopy side curtain airbag ("SCSCA") systems. Notwithstanding Plaintiff's concern that Ford was withholding additional OSI information regarding U222/U228 vehicles, Ford vehemently and repeatedly represented that nine (9) previously produced "MORS" reports represented the only similar incidents involving 2003-2012 Expedition or Lincoln Navigator vehicles.

This Court Ordered an expanded scope of OSI discovery and required the production of all "**unredacted** other incident documentation and discovery . . . ." In direct contradiction of Ford's representations and this Court's Orders, Ford has now, a month from trial, produced an additional **281** MORS reports, **some 94** of which, astonishingly, relate to similar incidents involving Expedition (U222)/Lincoln Navigator (U228) vehicles – **ove**r **ten times** the number of MORS reports that Ford represented to the Court comprised "all of the documentation and information" that existed. Even more egregiously, Ford has **redacted the**

**telephone numbers** from all newly-produced reports, and **redacted all identifying information**, including names, addresses and telephone numbers, from **154** of the non-Expedition/Navigator MORS documents produced.

Ford's gamesmanship – its strategic delay and incomplete and redacted production – directly contradicts this Court's prior Orders and causes an undue burden on Plaintiff to complete her investigation and designation of OSIs by July 15, 2013. Accordingly, Ford should be sanctioned.

### Procedural History/Summary of Dispute
### Regarding Other Similar Incident Information

This is a personal injury, strict product liability action. It arises from a July 4, 2011 automobile crash in Jackson County, Indiana that left Kirby McDaniel in a persistent vegetative state. (Doc. 1, pg. 3). A 2004 Lincoln Navigator, VIN 5LMFU27R84LJ25789, manufactured by Defendant Ford Motor Company and operated by Kirby McDaniel (the "subject vehicle"), was impacted by another vehicle and rolled over. (*Id.*). The subject vehicle's safety canopy side curtain airbag ("SCSCA") did not deploy. (*Id.*) Had the side curtain airbag deployed and the seatbelt pretensioners fired, Kirby McDaniel would not have suffered the severe traumatic brain injury that resulted in his persistent vegetative state. (*Id.*)

On December 17, 2012, Plaintiff filed her Motion to Determine Sufficiency of Answers and Objections by Defendant Ford Motor Company to Plaintiff's Request for Admission (Doc. 36); thus, first putting before this Court Plaintiff's concerns with Ford's gamesmanship and lack of candor in responding to Plaintiff's discovery. Particularly, Plaintiff took issue with the fact that the deposition testimony of Todd Clark, a Ford corporate representative, contradicted Ford's response to Plaintiff's Request for Admission No. 26:

> **Plaintiff's RFA 26:** **Admit that Ford Motor Company is aware of other rollover crashes involving U228 platform vehicles or other similar vehicles with similar rollover sensors and similar side impact accelerometers as the subject vehicle and whose SCSCA system did not deploy in either side impact crashes or rollover crashes.**
>
> **Ford's Response:** **Ford denies this Request as written.**

(*Id.*, *see also* Doc. 36-1). As set forth in Plaintiff's motion, Mr. Clark testified that he was aware of other incidents involving either rollover or side impact crashes where there was a non-deployment of the SCSCA in both Expedition/Navigator vehicles, as well as in Ford Explorers. (*Id.* at 4-5; *see also* Doc. 36-3, pgs. 350-54).

In response to Plaintiff's motion, Ford maintained its denial of RFA 26, but directed Plaintiff to a NHTSA investigation which involved non-deployments of

4

the safety canopy system in Lincoln Aviator and Ford Explorer vehicles, as discussed in Mr. Clark's deposition. (Doc. 37, pgs. 4-6). Ford also directed Plaintiff and the Court to customer contacts received by Ford's Customer Service Division ("FCSD") which were input into Ford's Master Owner Relations System ("MORS") database on or before June 30, 2012. (*Id.*; *see also* Doc. 78-7).

On February 2, 2013, Plaintiff's counsel wrote a detailed letter to Ford's counsel regarding Ford's insufficient responses to Plaintiff's discovery. (Doc. 70-2). This correspondence noted that Ford's responses to Plaintiff's Requests for Production Nos. 48, 49 and 51, Interrogatories Nos. 21 and 22 and Rule 30(b)(5)&(6) Deposition Notice Nos. 40-44, seeking documents and information regarding other incidents of non-deployments of the SCSCA system in Ford Expedition (U222)/Lincoln Navigator (U228) vehicles and other similar vehicles with the same or similar SCSCA system, were deficient and Plaintiff requested that Ford supplement its responses and provide Plaintiff additional information. (*Id.*). In response, Ford stated that it had looked for additional documents and **did not** have any additional documents to produce with respect to the 2003-2012 Ford Expedition (U222)/Lincoln Navigator (U228) vehicles. (Doc. 78-1).

After a series of correspondence between counsel regarding similar incident information, Ford once again stated that it had produced the MORS information it had located for the 2003-2012 Ford Expedition (U222)/Lincoln Navigator (U228) vehicles and the NHTSA letter, but that it could not locate any additional information sought by the Plaintiff. (Doc. 78-4).

On April 17, 2013, Plaintiff filed her Motion to Compel asking the Court to enter an Order compelling Ford to produce a number of items, including other similar incident information she had been seeking in discovery. (Doc. 70, pgs. 12-18). In particular, not just other incident information regarding Ford Expedition (U222)/Lincoln Navigator (U228) vehicles, but also similar vehicles with similar systems (such as the Ford Explorer, Mercury Mountaineer and Lincoln Aviator). (*Id*.; *see also* Doc. 81). Plaintiff sought not just information regarding litigated matters in her discovery requests, but also other incidents that may not have resulted in litigation. (*Id*.). Furthermore, the names, addresses, and telephone numbers for the complaining customers were redacted from the nine MORS reports produced by Ford, despite Plaintiff's specific request for the complaining customers' contact information. (*See* Doc. 81; PX1, Redacted MORS documents

originally produced). Without such information, the documents were rendered useless.

In response to Plaintiff's Motion to Compel, Ford entitled one section of its brief, "**FORD HAS ALREADY PRODUCED ALL INFORMATION AND DOCUMENTATION IN ITS POSSESSION, CUSTODY AND CONTROL REGARDING ALLEGED OTHER INCIDENTS**." (Doc. 78, pg. 8) (emphasis in original). Additionally, Ford stated that it had informed Plaintiff of information it could not find and that it had produced all MORS information in the database on or before June 30, 2012 concerning the non-deployment of Ford's Safety Canopy System in 2003-2012 Ford Expedition (U222)/Lincoln Navigator (U228) vehicles (*Id.* at 9). Ford also contended in its response that:

> Plaintiff asserts without basis that "it is clear Ford is withholding documents responsive to these requests." (Pl.'s Brief, at 18). Ford takes issue with this accusation as it is inflammatory, **unfounded** and **untrue**.

(Doc. 78 at 11) (emphasis added).

Moreover, Ford stated that it had produced "to Plaintiff **every manner of responsive information and material**, and informed Plaintiff when searches for certain categories of documents revealed none." (*Id.* at 12). In particular, Ford had represented that it had produced to Plaintiff **all** MORS information regarding

7

2003-2012 Ford Expedition (U222)/Lincoln Navigator (U228) vehicles, but that it did not locate responsive lawsuits, CCRG files, and CQIS information. (Doc. 78-4). As such, Ford led the Plaintiff and the Court to believe, at least with respect to the MORS information, that all reports regarding rollovers or side impacts which resulted in a non-deployment of the side curtain safety canopy airbag in a 2003-2012 Ford Expedition (U222)/Lincoln Navigator (U228) vehicle had been produced, albeit with the pertinent contact information redacted.

On May 7, 2013, this Court held a hearing on Plaintiff's Motion to Determine Motion to Determine Sufficiency of Answers and Objections by Defendant Ford Motor Company to Plaintiff's Request for Admission and Plaintiff's Motion to Compel. (PX2, Transcript from Hearing). During the hearing, Ford represented not only to Plaintiff's counsel, but also to this Court, that all information with respect to other incidents in 2003-2012 Ford Expedition (U222)/Lincoln Navigator (U228) vehicles had been produced, which included the MORS documents and a NHTSA letter (although this letter addressed Lincoln Aviator and Explorer vehicles). (PX2, pgs. 57, 60, 105-107). Ford's counsel mentioned several times that Ford had produced the MORS information regarding the 2003-2012 Ford Expedition (U222)/Lincoln Navigator (U228) vehicles and

8

that Ford was not trying to "play a game" or "put plaintiffs in a position that makes it untenable for them to present or address or seek to discover appropriate OI-type evidence". (PX2, pgs. 56, 58, 60). Further, the Court noted that while Plaintiff wanted additional OSI information regarding other vehicles (*i.e.*, Ford Explorer, Lincoln Aviator and Mercury Mountaineer), the only issue before it was Ford providing Plaintiff the names redacted from the produced MORS reports and the fact that Plaintiff thought Ford had additional information, which Ford represented it did not have with respect to the 2003-2012 Ford Expedition (U222)/Lincoln Navigator (U228) vehicles. (PX2, pg. 104).

In fact, when arguing against the section of Plaintiff's motion regarding compelling the deposition of an OSI corporate representative, Ford stated "that it almost belies the need for a witness, in my estimation, since we're **answering under oath what we have** and doing a duly diligent reasonable search for whatever it is we have and producing what we have." (PX2, 124) (emphasis added). In fact, this Court questioned Plaintiff's counsel regarding Ford's argument that what was produced is what Ford keeps. (PX2, 125). Again, suggesting that both the Court and Plaintiff's counsel understood Ford to be representing that at least with respect to the 2003-2012 Ford Expedition (U222)/Lincoln Navigator

(U228) vehicles, Ford had produced all information in its possession regarding other incidents.  As further evidence that it was understood that Ford had produced all information with respect to other incidents of non-deployments of the SCSCA in 2003-2012 Ford Expedition (U222)/Lincoln Navigator (U228) vehicles, this Court's Order regarding its ruling on other incident evidence noted that in response to Plaintiff's motion:

> **Ford counters that it has produced all such documents**.  It appears that **the central remaining issue** is whether the production of other incident evidence should be limited to Navigators and Expeditions from the subject model years, or whether this evidence should also be produced with respect to Explorers as well.

(Doc. 84, pg. 19) (emphasis added).

Based on Ford's representations, Plaintiff sought only:  (1) the contact information for the previously-produced MORS reports, (2) an OSI corporate representative deposition, and (3) the production of similar incident information with respect to Ford Explorers, Lincoln Aviators and Mercury Mountaineers.  This Court allowed Plaintiff to supplement her motion to compel to fully brief the issue of why she should be entitled to OSI information on other vehicles, including the 2002.5-2006 Ford Explorer, Lincoln Aviator and Mercury Mountaineer.  Ford

agreed to produce such other incident documents and information with respect to these vehicles. (Doc. 116-1).

This Court also ordered Ford to produce **un-redacted** MORS information which contained the personal and identifying customer information. (Doc. 84, pgs. 19-24). Ford did produce, in un-redacted form, the nine (9) previously-produced MORS reports for the 2003-2012 Ford Expedition (U222)/Lincoln Navigator (U228) vehicles. Ford has since been ordered to produce an OSI corporate representative for deposition by July 10, 2013. (Doc. 131, pg. 6).

## **ADDITIONAL PRODUCTION OF OSI INFORMATION**

On June 27, 2013, Ford produced approximately 281 additional MORS reports concerning other incident information. As noted above, Ford represented in written discovery responses, in correspondence between counsel, and in open Court at the May 7, 2013 hearing, that it had produced all other similar incident information with respect to 2003-2012 Ford Expedition (U222)/Lincoln Navigator (U228) vehicles. Despite, and in direct contradiction of, Ford's prior representations, **approximately 94 of the 281 MORS reports** produced June 27th relate specifically to these vehicles and the non-deployment of a SCSCA in rollover and side impact collisions. In Ford's most recent production,

approximately **seventy (70)** of the MORS reports involve the non-deployment of the SCSCA in a side impact crash of a U222/U228 vehicle, and **twenty-three (23)** involve the non-deployment of the SCSCA in a rollover crash of a U222/U228 vehicle.

In addition, Ford produced approximately 187 MORS reports with respect to the non-deployment of the SCSCA in Ford Explorer/Lincoln Aviator platform line vehicles. As such, a mere two weeks before Plaintiff must identify the OSI information she intends to rely upon at trial, and less than a month before Plaintiff must provide expert and witness testimony regarding OSI information she intends to present at trial, Ford has produced, for the first time, over 280 MORS reports. Not only is the amount of information produced overwhelming, but approximately 94 of the MORS reports produced to the Plaintiff involved Ford Expedition (U222)/Lincoln Navigator (U228) vehicles, which Ford has vehemently denied existed since November 2012.

In fact, Ford took issue with the fact that Plaintiff alleged it was hiding documents, and stated that such an accusation was "unfounded and untrue". (Doc. 78, pg. 11). Moreover, on numerous occasions at this Court's May 7, 2013 hearing, Ford represented that it was not trying to play games, hide the ball or

make it difficult for Plaintiff to discover other incident information, and that the information it had regarding non-deployment of the SCSCA in Ford Expedition (U222)/Lincoln Navigator (U228) vehicles had already been produced. (PX2, pgs. 56, 57, 58, 60, 105-107). In fact, the statement was made that it had represented under oath it had produced all the other incident information it had with respect to the foregoing vehicles, and as such a corporate representative on the issue was unnecessary. (*Id*. at 124). Ford has blatantly and repeatedly misrepresented the existence of additional MORS reports with respect to the non-deployment of the SCSCA in 2003-2012 Ford Expedition (U222)/Lincoln Navigator (U228) vehicles. In fact, Plaintiff's statements in her Motion to Compel with respect to Ford withholding such documents proved to be nothing but the absolute truth. For over six months, Ford has represented that it had produced all the MORS reports and all the information it had on other incidents of non-deployments of its side curtain safety canopy airbag system in the 2003-2012 Ford Expedition (U222)/Lincoln Navigator (U228) vehicles. It reality, Ford did not merely have **nine (9)** MORS documents to produce to the Plaintiff, but actually had **one hundred-three (103)** MORS documents with respect to the 2003-2012 Ford Expedition (U222)/Lincoln Navigator (U228) vehicles, **ninety-four (94) of which** it swore did not exist. Ford

13

produced approximately **ninety-four (94) additional** MORS reports with respect to the non-deployment of the SCSCA in the 2003-2012 Ford Expedition (U222)/Lincoln Navigator (U228) vehicles, despite denying the existence of such documents to both counsel and this Court. Such misrepresentations regarding the existence (or really non-existence) of documents relating to other similar incidents is not uncommon for Defendant Ford Motor Company. (*See* Docs 126-1, 126-2 (Texas court ordering the sanction of the striking of Ford's pleadings for similar conduct).) Ford's denial that such information exists, coupled with its production approximately a month before trial is absolutely inexcusable and severely hinders Plaintiff's ability to present and prove OSI evidence at trial.

Furthermore, **every** MORS report produced to the Plaintiff on June 27, 2013 contained documents with **redacted information. All** the Ford Expedition (U222)/Lincoln Navigator (U228) MORS reports produced had the **telephone numbers redacted**. In fact, in this latest production, Ford only produced 8 of the 9 MORS reports it had previously disclosed, and took the time and liberty to **redact** the telephone numbers, despite this Court's Order to the contrary. Further, 33 MORS reports for non-Expedition/Navigator vehicles had the telephone numbers for the customers redacted and **154** of the Explorer/Mountaineer MORS reports

14

had **all contact and indentifying information redacted**. <u>**None**</u> of the approximately 281 documents produced to the Plaintiff contained complete contact and identifying information. Ford's production is in **direct** violation of this Court's Order to Ford to provide Plaintiff the identifying and contact information for its customers in the MORS documents. (Doc. 84, pgs. 19-24).

## **PLAINTIFF'S REQUESTED RELIEF**

As sanctions for the foregoing, Plaintiff requests that the Court enter an Order against Defendant Ford as follows:

On or before July 10, 2013, Plaintiff shall identify up to fifty (50) of the incidents disclosed by Ford on June 27, 2013 which Plaintiff contends are additional OSIs. The Court will presume each of the incidents designated by Plaintiff to be a substantially similar incident, subject to rebuttal. On or before July 19, 2013, Ford shall offer any and all evidence that it contends rebuts the presumption that the incidents designated by Plaintiff are substantially similar, including documents, photographs, sworn testimony, depositions, and investigative reports. In addition, Ford shall, on or before July 25, 2013, make a corporate representative or expert witness available for deposition regarding the rebuttal evidence presented, if any. Any and all information or evidence relied upon by

Ford's witness must be produced by July 19, 2013.  Plaintiff shall present sur-rebuttal evidence, if any, on or before August 2, 2013.

Additionally, Plaintiff requests that her attorneys' fees and expenses reasonably incurred in connection with other incident evidence during the time period June 28, 2013 through August 2, 2013, be borne by Ford.

## **FONT CERTIFICATE**

Pursuant to LR 7.1D, NDGa. I hereby certify that this pleading was prepared using a font and point selection approved by the Court in LR 5.1C, NDGa.

Respectfully submitted, this the 29th day of June, 2013.

/s Thomas P. Willingham
**Thomas P. Willingham**
Georgia Bar No. 235049
Attorney for the Plaintiff
**LAW OFFICES OF THOMAS P. WILLINGHAM, P.C.**
3800 Colonnade Parkway, Suite 330
 (205) 298-1011
Fax (205) 298-1012
Email: tom@tpwpc.com

**M. Gino Brogdon, Sr.**
Georgia Bar No. 084252
Attorney for the Plaintiff
**LAW OFFICE OF M. GINO BRODGON, SR.,**

174 Walthall Street
Atlanta, GA  30316
(404)643-2927
Email: mginob@gmail.com

**R. Timothy Morrison**
Georgia Bar No. 525130
**Jay Hirsch**
Georgia Bar No. 357185
**M.J. Blakely, Jr.**
Georgia Bar No. 708906
Attorney for the Plaintiff
**POPE, McGLAMRY, KILPATRICK, MORRISON & NORWOOD, PC**
The Pinnacle, Suite 925
3455 Peachtree Road, N.E.
P.O. Box 191625 (31119-1625)
Atlanta, Georgia  30326-3243
(404) 523-7706
Fax (404) 524-1648
E-mail:  efile@pmkm.com

**David C. Rayfield**
Georgia Bar No. 596706
Attorney for the Plaintiff
**POPE, McGLAMRY, KILPATRICK, MORRISON & NORWOOD, PC**
1111 Bay Avenue, Suite 450
P.O. Box 2128 (31902-2128)
Columbus, Georgia  31901-2412
(706) 324-0050
Fax (706) 327-1536
E-mail:  efile@pmkm.com

# **CERTIFICATE OF SERVICE**

I hereby certify that on the 29th of June, 2013 a copy of the foregoing **EMERGENCY MOTION FOR *INSTANTER* HEARING REGARDING OSI DISCOVERY** with the Clerk of Court using the CM/ECF system which will automatically send email notification of such filing to the following attorneys of record:

Michael R. Boorman
Audrey K. Berland
HUFF, POWELL & BAILEY, LLC
999 Peachtree Street, NE
Suite 950
Atlanta, GA 30309

Paul F. Malek
Gregory Schuck
Jennifer Reid
HUIE, FERNAMBUCQ & STEWART, LLP
Three Protective Center
2801 Highway 280 South, Suite 200
Birmingham, AL 35223-2484

William L. Mennucci
Thompson Coe Cousins & Irons, LLP-Austin
Suite 1500
701 Brazos Street
Austin, TX 78701

/s Thomas P. Willingham
Thomas P. Willingham
Georgia Bar No. 235049
Attorney for the Plaintiff